IN RE INTEREST OF E.B., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. D.B.G., APPELLANT.
441 N.W.2d 637

Filed June 23, 1989.   No. 88-851.

Michael McGill and Robert J. Kmiecik, of McGill, Parsonage & Lanphier, P.C., for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

Hastings, C.J.

The mother appeals from an order of the separate juvenile court of Douglas County which terminated her parental rights to her son. She assigns as error that (1) the court's rehabilitation plan was not reasonable; (2) the State failed to prove by clear and convincing evidence that the mother willfully failed to comply with the rehabilitation plan; and (3) the court failed to find that the State had proved by clear and convincing evidence that termination of parental rights was in the best interests of the minor child, but nevertheless ordered such rights terminated. We affirm.

In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of S.C., S.J., and B.C., ante* p. 80, 439 N.W.2d 500 (1989); *In re Interest of J.S., A.C., and C.S.,* 227 Neb. 251, 417 N.W.2d 147 (1987).

A judgment terminating parental rights will be affirmed where the State has proved by clear and convincing evidence that the parent has willfully failed to comply with a rehabilitative plan ordered by the juvenile court, and it is in the best interests of the child that parental rights be terminated. *In re Interest of S.C., S.J., and B.C., supra; In re Interest of J.S., A.C., and C.S., supra.*

E.B., the minor child, was born January 16, 1986. On November 18 of that year, E.B. was admitted to the hospital suffering from multiple skull fractures, multiple bruises on the face and neck, and seizures related to the head trauma. The mother gave inconsistent explanations for the injuries, and, as a result, the State filed a petition in the separate juvenile court of Douglas County alleging that E.B. came within the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). He was immediately placed in foster care, where he has remained since.

The mother did not show up for a detention hearing set for December 23, 1986. On March 19, 1987, she denied the charges

in the petition, and the matter was set for trial.

At a followup exam on April 1, 1987, E.B.'s head growth was lagging, signifying poor brain growth. His vision was poor, his development was significantly behind, his motor skills were very slow, and his postural reflexes were not good. The outlook was pessimistic, and the prediction was that he would have significant brain function problems, both in cognitive functioning and motor skills.

At the trial on April 7, 1987, the mother admitted the allegation that her child had suffered serious injuries while in her care and control. She claimed at that time that the injuries occurred when E.B. fell off the couch and hit his head on a table while two teenage boys were babysitting him.

The mother was involved with a man named Gary Welchen, who was convicted of causing the injuries suffered by E.B. The mother at one time stated that Welchen had indeed caused the injuries, but at other times she maintained that she caused the injuries. She stated under oath on April 21, 1987, that she inflicted the injuries on E.B. by slapping him so hard that he fell down a flight of stairs.

On May 20, 1987, a dispositional hearing was held, at which time the court ordered that the child continue in foster care; that the mother undergo a psychological evaluation to assess her ability to care for her child; that the mother follow any recommendations stemming from such evaluation; and that the mother participate in a psychiatric evaluation and follow any recommendations contained therein.

At the time of that hearing, E.B.'s vision was reported as "guarded," as he was still hemorrhaging behind his eyes and could lose his vision; his motor development was poor; and, although he was at that time approximately 16 months old, he functioned at a 6- to 8-month level. His head size was very small in relation to his body size, which indicated that his brain was not growing. E.B. was on phenobarbital to control his seizures.

Out of a possible 21 visits with E.B. since the filing of the petition to the time of the hearing, the mother had missed 12. She gave as her reason that sometimes the bus was late. She did visit Welchen in the correctional center once a week, even though she did not visit her child regularly.

Following a psychiatric evaluation, the doctor noted that the appellant seemed not to grasp or comprehend the potential harm and possible prognosis for injuries such as those suffered by E.B.

A review hearing was conducted on March 21, 1988. At that time, although E.B. was over 2 years old, he still was only functioning at a 9- to 11-month age level.

The mother's compliance with her rehabilitation plan had been "minimal at best" in the past 6 months, according to one of the witnesses. She attended only 8 of 23 scheduled visits with her son. She slept through one 3-hour visit because she had been up the previous night watching videos. She did not go to individual counseling as she had been ordered and did not always report her changes of address as she had been instructed. (She moved approximately five times between September of 1987 and February of 1988). She did not satisfactorily participate in E.B.'s treatment program, did not pursue a vocational program, and did not follow any of the recommendations of her psychiatrist.

Another hearing was held on June 21, 1988. E.B. at that time was still functioning at the 9- to 11-month level, although he was nearly 2¹/₂ years old. The mother got married on May 9, 1988, but she failed to notify caseworkers of this change in her situation. Her husband was undergoing psychiatric care at Douglas County Hospital.

The State filed its motion for termination of the appellant's parental rights, alleging that E.B. came within the provisions of Neb. Rev. Stat. § 43-292(6) (Reissue 1988); that is, that reasonable efforts under the direction of the court had failed to correct the conditions leading to the determination that the child was within the meaning of § 43-247(3)(a). The petition was heard on September 15, 1988.

At that hearing, the court found that the mother did not complete parenting classes and that she attended but 2 of 11 scheduled counseling sessions. Her excuse for nonattendance was that she "had places to go." She failed to maintain independent housing, having lived in 10 different residences during the 2 years that the court was involved with her. She failed to cooperate in the program designed to instruct her as to

how to care for E.B. and his special needs. She attended only 7 of 19 weekly sessions in which she was to work with a preschool teacher for the handicapped and E.B. At one of those sessions it was discovered that the mother was carrying a gun in her purse.

The mother visited E.B. only 29 times out of a possible 78 visits. This was in spite of the fact that Child Protective Services actually provided her with nearly 200 bus tickets. She stated at one time that she knew how to work with E.B.'s physical handicap, but then admitted that she did not actually think that E.B. was handicapped.

Our examination of the plan for rehabilitation that was worked out and approved by the court reveals that it was entirely reasonable and designed to help the mother help her child. She failed miserably to comply with that plan. She refused to attend parenting classes because she claims this was an unreasonable and immaterial requirement because "[t]here was no evidence that [she] was a bad parent." Brief for appellant at 22. Of course, the evidence demonstrated that she either abused her baby or lied to protect the man who did. She refused to show enough interest in the child to even visit him when the opportunities arose.

From a de novo review of the record, we find the evidence clear and convincing that the appellant willfully failed to comply with a reasonable court-ordered rehabilitation plan and that the evidence also clearly and convincingly proved that it was in the best interests of the child that the mother's parental rights be terminated. This case is hopeless.

The judgment of the juvenile court is affirmed.

AFFIRMED.