IN RE INTEREST OF R.T. AND R.T., CHILDREN UNDER 18 YEARS OF
AGE.
STATE OF NEBRASKA, APPELLEE, V. V.T., APPELLANT.
446 N.W.2d 12

Filed September 22, 1989.    No. 88-837.

John J. Bedel, of Byrne, Rothery, Lewis, Bedel, Tubach &
Zielinski, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and
Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

GRANT, J.
V.T., the mother of R.T., born July 12, 1984, and R.T., born
January 6, 1986, appeals from an order of the separate juvenile
court of Douglas County, Nebraska, which terminated V.T.'s
parental rights to the two children. The case was initiated by a
petition filed November 4, 1986, with the juvenile court. The
petition alleged the two minors were children within the
meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988), in
that the children were under 18 years old and lacked proper
parental care by reason of the fault or habits of V.T., their
mother. At the time of the filing of this petition, the children
were in the custody of the Nebraska Department of Social

Services (DSS), where they had been placed on October 18, 1986, by the children's great-grandmother, who was unable to care for the children and was unable to locate V.T.

On December 11, 1986, a hearing was held before the juvenile court. V.T. was present with her court-appointed attorney and admitted the allegations of the petition that the children were within the meaning of § 43-247(3)(a). The court set a disposition hearing for January 16, 1987, and ordered the children to be left temporarily with DSS.

On January 16, a disposition hearing was held. V.T. was present at the hearing with her attorney. Statements to the court indicated that V.T. was in the Douglas County Correctional Center. The court ordered that the children remain in the temporary custody of DSS and ordered V.T. to comply with the court's order requiring her to obtain legal employment and establish suitable housing, to undergo psychological and chemical dependency evaluations and to follow the recommendations resulting from the evaluations, to participate in parenting classes, to maintain consistent visitation with the children as arranged by DSS, and to cooperate with all professionals in the case.

On July 16, 1987, a review hearing was held in the juvenile court. V.T. and her attorney were present. Evidence adduced at this hearing showed that V.T. had been released on January 26, 1987, from her incarceration at the time of the disposition hearing, but had not contacted DSS or any professionals involved in her case until February 10, 1987. DSS arranged visitations for V.T. with her children during the time between February 19 and March 12, 1987. On March 20, 1987, V.T. was sentenced to incarceration at the Douglas County Correctional Center for 6 months for shoplifting.

At the time of the July 16 hearing, V.T. was 18 years old and pregnant by a man who was not the father of either of the children involved in this case. V.T. sought visitation at the correctional center with her children, but those visitations were denied by the court because of the ages of the children and the location of the requested visitations. Also, the juvenile court ordered another review 6 months later and ordered V.T. to comply with the same general requirements of the January 16,

1987, order, with the additional order that she "refrain from all illegal activities."

A review hearing was held on January 15, 1988. V.T. and her attorney were present. Evidence at this hearing showed that V.T. had been released from incarceration on August 22, 1987, and had complied, in some respects, with the court's order of July 16, 1987, but not fully. V.T. was again ordered to comply with similar requirements, and another review hearing was scheduled 3 months later.

On April 15, 1988, another review hearing was held. V.T. and her attorney were present. Evidence showed that V.T. was again incarcerated, pursuant to a 1-year sentence for shoplifting imposed after the January 1988 hearing. Testimony showed that V.T. had not fully complied with the court's order even before her incarceration.

On May 26, 1988, a motion was filed seeking a termination of V.T.'s parental rights as to the two children involved because of V.T.'s refusal to substantially comply with orders of the juvenile court of January 16, 1987, July 16, 1987, and January 15, 1988.

A hearing was held on this motion on August 16, 1988. V.T. and her attorney were present. Evidence adduced from the clinical psychologist who examined V.T. in June 1987 showed that V.T. would not, or could not, cooperate with necessary treatment to improve her "personality functioning." Much of the problem was based on V.T.'s repeated incarceration, but the fact remained that for whatever reason, V.T. did not cooperate with her psychologist in treatment essential to V.T.'s ability to function in society.

Other testimony showed that V.T. was ordered to participate in individual counseling to deal with her "compulsive shoplifting." She saw a family therapist in that regard three times beginning November 10, 1987, did not attend any such sessions after November 24, 1987, and gave no reason for not continuing the counseling.

Other testimony showed that V.T.'s visitation with her children was sporadic during the times V.T. was not incarcerated. V.T. testified primarily to the effect that she could not visit her children while she was incarcerated because DSS

would not bring the children to the correctional center or to the women's detention center at York, Nebraska. Other testimony showed the inappropriateness of such visitations and the practical difficulties in arranging the visitations.

At the conclusion of the testimony, the court ordered V.T.'s parental rights terminated for V.T.'s noncompliance with the court-ordered plans. V.T. timely appealed to this court, assigning four errors, which may be consolidated into three: (1) The State failed to show by clear and convincing evidence that the mother's rights should be terminated for failure to comply with a plan of rehabilitation; (2) the mother was not allowed sufficient opportunity to comply with such a plan; and (3) the court based its decision to terminate the mother's parental rights solely on her incarceration.

> " 'In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another.' "

*In re Interest of S.C., S.J., and B.C.*, 232 Neb 80, 89-90, 439 N.W.2d 500, 506 (1989); *In re Interest of P.M.C.*, 231 Neb. 701, 437 N.W.2d 786 (1989); *In re Interest of P.D.*, 231 Neb. 608, 437 N.W.2d 156 (1989).

With respect to the mother's first assignment of error, the evidence shows that upon the mother's release from the Douglas County Department of Corrections in January 1987, she failed to cooperate with professionals when she waited over 2 weeks before contacting Child Protective Services. Although she occasionally visited her children when she was not incarcerated, she failed to maintain consistent visitation with them as arranged by DSS. She did not follow the recommendations of professionals when she stopped participating in family therapy sessions and when she failed to complete counseling. She also failed to maintain regular employment and housing, although her opportunities to do so were limited as a result of her incarceration. In addition, V.T. did not refrain from illegal

activities. At the time the motion for termination of her parental rights was filed, she was incarcerated for a third offense of shoplifting. A judgment terminating parental rights will be affirmed where the State has proved by clear and convincing evidence that the parent has willfully failed to comply, in whole or in part, with a material provision of the rehabilitation plan, and termination of parental rights is in the best interests of the children. *In re Interest of E.B.*, 232 Neb. 653, 441 N.W.2d 637 (1989). There was such clear and convincing evidence in this case. V.T.'s first assignment is without merit.

V.T. contends in her second assignment of error that she was not afforded a reasonable opportunity to comply with the plan of rehabilitation. She asserts that she was unable to maintain suitable housing and employment because of her incarceration and was not afforded reasonable time to comply with the plan's requirements after her release. She also asserts that she committed only one crime of shoplifting after she was ordered to refrain from illegal activities.

The evidence shows that at no time immediately before or after the mother's incarceration did she establish adequate employment, although she had ample opportunity to do so. She was convicted of shoplifting twice before the requirement that she refrain from illegal activities was added to the rehabilitation plan. After a court orders a rehabilitation plan, the court is not prohibited from considering prior events when deciding whether to terminate parental rights. See *In re Interest of P.D., supra*. In the present case, the mother's second assignment of error is without merit.

Finally, the mother assigns as error the trial court's finding that termination of parental rights was solely based on her conviction of a crime and incarceration therefor. This contention does not reflect the facts before the court. In this case, while the fact of incarceration was involuntary as far as V.T. was concerned, her illegal activities leading to incarceration were voluntary on V.T.'s part. "[T]he fact of incarceration may be considered along with other factors in determining whether parental rights should be terminated." *In re Interest of M.L.B.*, 221 Neb. 396, 403, 377 N.W.2d 521, 525 (1985). As stated in *In*

*re Interest of Reed*, 212 Neb. 208, 211, 322 N.W.2d 411, 413 (1982), "Furthermore, we cannot disregard the appellant's conduct which resulted in his incarceration . . . ."

In this case, V.T.'s repeated shoplifting and subsequent incarcerations, when coupled with the other evidence discussed herein, establish that V.T. willfully failed to comply with the reasonable provisions of the rehabilitation plan. Such refusal is grounds for termination of parental rights. Neb. Rev. Stat. § 43-292(6) (Reissue 1988); *In re Interest of E.B., supra.* In addition, it was clearly in the best interests of the children to terminate her parental rights. A child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity. *In re Interest of D.C.*, 229 Neb. 359, 426 N.W.2d 541 (1988). The judgment is affirmed.

AFFIRMED.