IN RE INTEREST OF B.A.G., JR., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. B.A.G., SR., APPELLANT.
457 N.W.2d 292

Filed July 6, 1990.    No. 89-1440.

H. Daniel Smith, of Sherrets & Smith, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The father, B.A.G., Sr., appeals from the order of the separate juvenile court of Douglas County terminating his parental rights to his son, B.A.G., Jr., and the order overruling his motion for a new trial.

Appellant assigns as error, generally, the court's findings that (1) he abandoned his son within the meaning of Neb. Rev. Stat. § 43-292(1) (Reissue 1988), (2) he neglected his son within the meaning of § 43-292(2), (3) it was in the best interests of the minor child that appellant's parental rights be terminated, (4) it was in the best interests of his son to remain in the custody of the Department of Social Services for adoption purposes, and (5) appellant's motion for visitation with his son should be denied.

In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the trial court, but, where the evidence is in conflict, the Supreme Court considers and may give weight to the trial court's observation of the witnesses and acceptance of one version of the facts rather than another. *In re Interest of T.E., S.E., and R.E., ante* p. 420, 455 N.W.2d 562 (1990).

The minor child was born on January 7, 1976. The child's natural mother, V.P., and his natural father, the appellant, were divorced sometime in 1975, according to appellant, but he also claims that the child was born before the divorce. Custody was awarded to the mother, and appellant was ordered to make monthly child support payments, none of which were ever made.

Appellant has been convicted of five felonies since 1975. There was apparently one conviction in 1976; there were two convictions for which he served time in prison from 1980 to 1983; and there were two more convictions, one for possession of over a pound of marijuana and another for use of a firearm in the commission of a felony. He is currently serving a sentence of 20 months to 5 years and a consecutive sentence of 5 to 10 years for those latter two convictions. Although eligible for parole in April 1990, appellant could be incarcerated until 1993.

Appellant claims to have last seen his son in 1983, although he says his parents lost contact with the boy's mother 8 or 9 years ago, which would have been in 1980 or 1981. He says that he does not know if he was granted visitation rights in the divorce decree, although he admits having received a copy of certain court papers which ordered him to pay child support.

He has never contacted the divorcing court to ascertain whether he was granted such visitation rights, nor has he made any attempt through the court to obtain custody. He claims to have made attempts through his family in Florida to locate his former wife and the child. He said that he made no attempts directly because he did not have the phone number and address, but admitted that his family had that information.

According to the appellant, he had no notification prior to July 1989 that proceedings were being held with reference to custody of his son and termination of his parental rights. The court file discloses service of summons on appellant by certified mail on August 24, 1989.

This case first came to the attention of juvenile authorities when, on December 17, 1987, the child was taken into protective custody by the Omaha police. The child had not seen his mother for over 2 days, and she had made no arrangements for his care. Various hearings were held, and the record leaves no doubt that the appellant had had no contact with his son for at least 6 years and had never supported him other than to name him as a Social Security beneficiary, for which the son received certain payments.

A Child Protective Services worker testified that appellant had made no contact with Child Protective Services from December 1987 through July 1989. This same witness testified that she had never been able to find the mother. It was not until after the child informed her that Social Security benefits had been paid in his behalf that she began to follow that lead. She was not sure whether the benefits were for disability or death of the appellant. Her attempts to gain this information from the Social Security office were unsuccessful. Finally, she was able to learn through Social Security records that there was a second address listed for appellant at the state penitentiary, so this witness sent a letter to appellant on July 11, 1989.

The minor child testified that he had little contact with his father when he was very young. He estimated that his father had been out of his life for 10 to 11 years. The child was told by his mother that the father was running from the police and, on another occasion, that she had heard he was dead. The minor said that he had never received a card, a letter, a present, or a

phone call from his father.

The child stated at one point in his testimony that he would like to have a relationship with his father. However, he also said that he was happy in the home where he was then living and felt comfortable there. He also said that he thought it would be okay to be adopted. He also expressed a good deal of ambivalence, stating that he would probably rather stay where he was in foster care without adoption and then, when asked if he would rather be in foster care until he was 19 or be adopted, stating that he probably would rather be adopted.

An order terminating parental rights must be based on clear and convincing evidence. Clear and convincing means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of J.B. and A.P., ante* p. 74, 453 N.W.2d 477 (1990).

Although a parent's parental rights should not be terminated for the sole reason of conviction of crime and incarceration, the fact of incarceration may be considered along with other factors in determining whether parental rights should be terminated. See, *In re Interest of R.T. and R.T.*, 233 Neb. 483, 446 N.W.2d 12 (1989); *In re Interest of Wagner and Russell*, 209 Neb. 33, 305 N.W.2d 900 (1981); *In re Interest of Ditter*, 212 Neb. 279, 322 N.W.2d 642 (1982); *In re Interest of Reed*, 212 Neb. 208, 322 N.W.2d 411 (1982); *In re Interest of M.L.B.*, 221 Neb. 396, 377 N.W.2d 521 (1985).

In the case of *In re Interest of R.T. and R.T., supra*, this court said at 487-88, 446 N.W.2d at 16:

> In this case, while the fact of incarceration was involuntary as far as V.T. was concerned, her illegal activities leading to incarceration were voluntary on V.T.'s part. "[T]he fact of incarceration may be considered along with other factors in determining whether parental rights should be terminated." [Citation omitted.] As stated in *In re Interest of Reed*, 212 Neb. 208, 211, 322 N.W.2d 411, 413 (1982), "Furthermore, we cannot disregard the appellant's conduct which resulted in his incarceration . . . ."

Section 43-292(1) provides that the court may terminate all

parental rights between a parent and child when the parent has abandoned the child for 6 months or more immediately prior to the filing of the petition. Abandonment, for the purpose of § 43-292(1), is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and opportunity for displaying parental affection for the child. *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990).

The question of abandonment is largely one of intent, to be determined in each case from all of the facts and circumstances. *In re Interest of A.G.G.*, 230 Neb. 707, 433 N.W.2d 185 (1988).

To prove abandonment, the evidence must clearly and convincingly show that the parent has acted toward the child in a manner evidencing a settled purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. Mere inadequacy is not the test. See *In re Adoption of Simonton*, 211 Neb. 777, 320 N.W.2d 449 (1982).

The parental obligation is a positive duty which encompasses more than a financial obligation. It requires continuing interest in the child and a genuine effort to maintain communication and association with that child. *In re Interest of J.M.D.*, 233 Neb. 540, 446 N.W.2d 233 (1989).

Abandonment is not an ambulatory thing, the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child. *In re Interest of J.M.D., supra.*

During the past 14 years, appellant has voluntarily chosen to violate the law so as to have been convicted of five separate felonies. Although his incarceration on each occasion was nonvoluntary in a sense of the word, his actions that put him in prison were every bit as voluntary as if he had purchased a ticket for a 6-, 7-, or 8-year trek into Siberia. He just as effectively placed himself in a position where he could not possibly offer his "presence, care, love, protection, maintenance, and opportunity for displaying parental affection."

During the times that he was not incarcerated, appellant did not know whether he had been granted visitation rights by court

decree; he had a court order which required him to pay child support, which he has never done; and he knew what court handled his dissolution proceedings, yet made no inquiry to learn the whereabouts of his son or to obtain custody rights. He has been spurred to action only after receiving notice that his parental rights were to be terminated.

We have no problem finding that abandonment existed in a real and a legal sense and continued for more than a 6-month period before the filing of the petition for termination.

Having concluded that abandonment existed, it is not necessary to discuss in detail the issue of a substantial and continuous or repeated neglect of this child and the refusal by the appellant to furnish necessary care and protection, as required by § 43-292(2). That is abundantly clear from the facts recited above and the discussion relating to abandonment.

There still must be a showing that termination of the parental rights will be in the child's best interests. It is axiomatic that a child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity. *In re Interest of M.M., C.M., and D.M.*, 234 Neb. 839, 452 N.W.2d 753 (1990).

The record discloses that the child is doing well in the foster home and he wants to stay there. Although the statement is not necessarily determinative, and perhaps was hesitantly expressed, the child did say that he would like to stay where he was and to be adopted. We think that after 14 years of being adrift, he has a right to drop anchor.

Having disposed of the case in this manner, it is unnecessary for us to address assignments of error Nos. 4 and 5.

The judgment of the separate juvenile court is affirmed.

AFFIRMED.