**In re T.J., M.D. & C.J., Appellants.**

**In re M.H., T.J., Appellant.**

**Nos. 94–FS–140, 94–FS–274, 94–FS–277.**

District of Columbia Court of Appeals.

April 26, 1996.

Before WAGNER, Chief Judge,* FERREN, TERRY, STEADMAN,* SCHWELB, FARRELL, KING,* RUIZ,** and REID, Associate Judges.

ORDER

PER CURIAM.

On consideration of the petition of appellee, M.H., for rehearing and rehearing en banc, the opposition and responses thereto, the motion of Mattie Giles to file amicus curiae brief supporting petition, the lodged brief, the motion of appellants for leave to late file opposition to motion to file amicus curiae brief, and the lodged opposition, it is

ORDERED by the merits division* that the petition for rehearing is denied. It is

FURTHER ORDERED that the motion of Mattie Giles to file amicus curiae brief supporting petition and the motion of appellants for leave to late file opposition to motion to file amicus curiae brief are granted and the Clerk is directed to file the lodged brief of amicus curiae and the lodged opposition to the motion; and it appearing that the majority of the judges of this court has voted to deny the petition for rehearing en banc, it is

FURTHER ORDERED that the petition for rehearing en banc is denied.

On Petition for Rehearing En Banc

Statement of FERREN, Associate Judge, dissenting from denial of the petition for rehearing en banc:

The division in this case has ruled:

> We now ... hold that unless it is established that the parent is not competent to make such a decision, a child and the natural parents share a vital interest in preventing erroneous termination of their natural relationship, and, therefore, a parent's choice of a fit custodian for the child must be given weighty consideration which can be overcome only by a showing, by clear and convincing evidence, that the custodial arrangement and preservation of the parent-child relationship is clearly contrary to the child's best interest.

*In re T.J., M.D., & C.J.*, 666 A.2d 1, 11 (D.C.1995) (citation omitted). My quarrel is not with this rule of law. Nor am I sure that an injustice would result from the division's disposition. But I believe the division seriously errs in presuming to apply its new rule of law to an old record.

The division not only reverses T.J.'s adoption by the foster mother but also remands the case for entry of an order granting custody to the child's great aunt. Absent trial court findings of fact under the newly adopted clear and convincing evidence stan-

** Associate Judge Ruiz has recused herself from these cases.

dard, this court should not itself award custody. That order not only requires improper appellate court fact-finding, as Judge Schwelb points out, but also results in an imprudent appellate court disposition based on a stale record. It is one thing to affirm trial court findings as of the time they are made or to remand for new findings which, in a case like this, presumably would take into account evidence of changed circumstances since the earlier ruling. It is quite another thing for an appellate court to apply a newly-announced rule of law to its own findings of fact based on a record dated years earlier, and then to order a change of custody. For all the division knows, the trial judge on remand—reviewing past and present facts after hearing from the parties and material witnesses—might see the matter differently even when the new rule of law is applied. Rather than presume to know what is in the child's best interest at this time, the division should have remanded for the trial court to reopen the record and apply the law of this case as all the facts now warrant. After all, a child's life is at stake, and one would think that any change of custody should occur only after the most current information is considered.

I had hoped the division would revise its opinion by granting the petition for rehearing, since this is not the kind of routine correction the en banc court is normally convened to address. But the division has voted not to rehear. Because I am concerned about the impact on all concerned of an immediate change of custody without an updated review of the facts that conceivably could affect the result, I would have the en banc court rehear the case in the hope of obtaining a more principled disposition.

I recognize the importance of finality. Presumably, the division hoped to achieve that result here rather than remanding for new findings that might lead to still another appeal and continued uncertainty. But in doing so the division acted both as lawmaker and as fact-finder—without all the facts. When this court announces a rule of law different from the one employed by the trial court, it is sometimes possible for this court to say that, even under the new rule, the result must be such-and-such, as a matter of law, on this record. But that presupposes a static record. In this kind of case, the record can change significantly over time, and thus it is important that the correct rule of law be applied to a current, not an old, record. This the division did not—indeed, it could not—do.

The division, however, ended its opinion with footnote 20:

This conclusion is reached with the recognition that an initial order for child custody is always open to modification by the court where warranted by a change of circumstances affecting the child's best interest.

*Id.* at 17 n. 20. I take this to mean that on proper motion the parties and the trial court effectively can interdict this court's order for an immediate change of custody by reopening the record to reexamine whether a change of custody would be appropriate. If I am correct in this interpretation of the court's order, it would have saved everyone concerned a good deal of anxiety, as well as considerable time and effort, if the division had said so directly—or, better still, had announced its new clear and convincing evidence standard and then simply remanded for the trial court to apply it.

Statement of SCHWELB, Associate Judge, dissenting from the denial of the petition for rehearing en banc:

## I.

The trial judge gave this difficult case balanced, thoughtful and sensitive consideration. He recognized that there was much to be said on both sides of the controversy, and he effectively articulated the strengths and weaknesses of the respective parties' positions. In the end, however, he concluded that the foster mother's petition to adopt T.J. should be granted because a contrary disposition would create an unacceptable risk of serious harm to the boy. The judge explained that

[f]or me, the pre-eminent reasons for approving [T.J.'s] adoption, despite my confidence in his great-aunt's competence to provide him a warm and loving home, are [T.J.'s] fierce attachment to [the foster

mother], the wonders she has accomplished with him, her extraordinary parental abilities, and *the serious risk that pulling [T.J.] away from her will permanently scar his development.*

(Emphasis added).

With respect to the expert testimony, the trial judge, who heard the witnesses and had the opportunity to assess their evidence firsthand, found Dr. James Egan's views and analysis to be the "most informative and persuasive." In conformity with Dr. Egan's testimony, the judge found as follows:

Essentially, for a child's successful development, race, gender, extended family, and all else is subservient to the fundamental importance of forming an attachment very early on to a person who is viewed as fundamentally different from all others and irreplaceable. When that fails to happen, when the attachment is not fixed, or if fixed, is disrupted, the child has truly serious difficulties developing into a caring, loving, human being....

[T.J.] has not had an easy four years. That he is doing as well as he is, is, in Dr. Egan's words, "a triumph for him and for those who have cared for him, but it's a fragile triumph." Moving now, even to a home as caring as [the great aunt's], *would be a disaster* because of the very real risk that in destroying his trusting attachment to [the foster mother] [T.J.] will be unable to trust anyone.

That to me is the crux of these cases. Against long odds [T.J.] has succeeded in establishing a son/mother attachment with [the foster mother]. That bond should not be severed.

(Emphasis added).

Any fair-minded reader of the judge's opinion would, I think, agree that it was written after full reflection on the difficult issues at hand. The judge did not exaggerate or overstate. He chose his words carefully. I am quite sure that when the judge used the word "disaster," he meant exactly that.

## II.

In spite of the trial judge's finding that removal would create a serious risk of permanently scarring T.J.'s development, the division has directed the judge to take the very step which he has described as courting disaster. The division has not held, nor could it rationally hold, that the judge's evidentiary finding that removal would be disastrous is clearly erroneous, for there was ample expert evidence to support it.[1] The effect of the division's opinion is therefore to order that T.J. be moved out of his home *notwithstanding the judge's finding that such a step would create an unacceptable risk of serious harm.*

The division has held that the judge erred in applying the "preponderance of the evidence" standard to the question whether it was in T.J.'s best interest to be adopted by the foster mother. According to the division, a "clear and convincing" evidence standard should have been applied instead. Assuming, *arguendo*, that the division's position as to the required level of proof is correct, the appropriate remedy would be to remand the case to the trial judge with directions to reconsider the record under the clear and convincing evidence standard.[2] Telling the judge to issue an order which, as he has expressly found, would court disaster and risk serious harm to the child is not, in my opinion, an acceptable option.[3]

1. The division does make an appellate finding of fact that the foster mother failed to make the necessary showing by clear and convincing evidence. In my opinion, it is the trial judge's job, and not the appellate court's, to make such findings.

2. Because the judge explicitly found by clear and convincing evidence that the biological parents' consent to T.J.'s adoption had been withheld contrary to T.J.'s best interests, and because he believed that moving T.J. out of his home would be a disaster, I question whether his application

of the allegedly wrong standard affected his ultimate disposition.

3. I acknowledge, however, that footnote 20 to the division's opinion, 666 A.2d at 17, tempers the rigor of the holding. The trial judge will presumably have to decide, in conformity with that footnote, whether the additional time which T.J. has remained in the foster mother's home since the trial represents a new and material change of circumstances. T.J. is now more than six and a half years old, and has lived in the foster mother's home for more than four years.

## III.

Rehearing en banc is appropriate only "(1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a question of exceptional importance." D.C.App. R. 40(e). I believe that each of these criteria has been satisfied in this case.

We have repeatedly held that where a child's future placement is at issue, the court must act as *parens patriae* in the child's best interest, and must not expose him to serious risk of harm. *See, e.g., In re L.L.,* 653 A.2d 873, 886–87 (D.C.1995); *In re L.W.,* 613 A.2d 350, 354–55 (D.C.1992). "Courts will not gamble with a child's future." *L.L., supra,* 653 A.2d at 887 (quoting *In re Interest of P.M.C.,* 231 Neb. 701, 437 N.W.2d 786, 792 (1989)).[4] We have insisted that judges "monitor the situation carefully and promptly take steps to protect [the child] if [his] physical or emotional welfare is endangered." *In re S.C.M.,* 653 A.2d 398, 406 n. 12 (D.C.1995). Each case is, of course, different, but ordering the removal of T.J. from his home notwithstanding a finding that such a move would be a disaster for him cannot be reconciled with the fundamental reasoning which underlies the cited authorities, as well as many others.

Moreover, the trial judge's decision was consistent not only with Dr. Egan' testimony, but also with our past jurisprudence. We have recognized that it would be "ruthless beyond description to take a child out of a loving home, when [he] has lived at that home for a substantial period of time as a result of [his] biological parents' inability or unwillingness to care for [him]." *L.L., supra,* 653 A.2d at 883 (quoting *In re: Hazuka's Adoption,* 345 Pa. 432, 29 A.2d 88, 90 (1942)); *see also* authorities cited *id.* at 883–84. In light of the trial judge's evidentiary findings and the expert testimony on which they were based, the removal of T.J. from the foster mother's home would likewise be unfair to him. In my judgment, the division's disposition therefore imperils the uniformity of our decisions within the meaning of D.C.App. R. 40(e)(1).

This appeal also raises a question of exceptional importance. *See* Rule 40(e)(2). The case is important not only to T.J., whose future and well-being have been placed at risk, but also to innumerable other children whose interests may be jeopardized by a precedent of the kind which the division's opinion sets in this case. Never before, to the best of my knowledge, have we ordained, by appellate *fiat,* a disposition which, according to the well-supported evidentiary findings of the judge who heard the case, would threaten disaster to the child in whose interest the court is supposed to be acting.

The full court should look long and hard at a division opinion creating such a precedent. Accordingly, I respectfully dissent from the denial of the foster mother's petition for rehearing en banc.

Even assuming, as the division suggests, that no impartial trier of fact could reasonably have ruled for the foster mother at the time of the trial if the clear and convincing evidence standard had been utilized, there have now been two more years of bonding since that time.

4. In *L.L. supra,* we went so far as to set aside a trial judge's decision where, in our view, the judge's disposition would have exposed the child to an unacceptably high risk to his physical and emotional well-being. In the present case, in which the judge has acted to protect the child from harm, this court should not interfere.