IN RE INTEREST OF R.H., T.H., AND J.H., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. T. H., APPELLANT.
367 N.W.2d 145

Filed May 10, 1985.   Nos. 84-557, 84-558.

Lisa C. Lewis of Byrne, Rothery, Borchers & Lewis, P.C., for appellant.

Donald L. Knowles, Douglas County Attorney, and Francis T. Belsky, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from the separate juvenile court of Douglas County. The court ordered the parental rights of the mother of the children terminated. We review the matter de novo upon the record to determine if the order is supported by clear and convincing evidence. *In re Interest of S.A.S., ante* p. 500, 363 N.W.2d 546 (1985).

The evidence discloses that R.H., a male child born July 1, 1977, T.H., a female child born December 9, 1980, and J.H., a male child born December 28, 1981, were born out of wedlock to the mother, T.H., and conceived through different fathers.

R.H. came into the juvenile system when temporary custody was awarded to the Douglas County Department of Social

Services at a hearing on March 3, 1982, for protective reasons. At a subsequent hearing, evidence was adduced that R.H., then 4 years of age, bore evidence of a severe beating at the hands of the mother's live-in boyfriend. On May 24, 1982, R.H. was adjudged to be a neglected child. Neb. Rev. Stat. § 43-202(2)(c) (Reissue 1978). Subsequent dispositional hearings placed the child in foster care, and a rehabilitative order was entered directing the mother to correct the circumstances leading to the adjudication and to provide R.H. with a wholesome and suitable environment.

T.H. and J.H. entered the juvenile system on October 5, 1982, as a result of another temporary order for protective custody, resulting from the mother's incarceration on a theft conviction. Subsequent adjudication of neglect followed, and T.H. and J.H. were placed in foster care.

The familiar litany of review hearings, counseling, and failure to comply, even minimally, with court-ordered rehabilitation plans followed, resulting in the final termination of parental rights on May 30, 1984. At the time of the termination hearing, the mother was an inmate in the Nebraska Center for Women in York, serving a term of 1 year for her third theft conviction, and was pregnant with her fourth child, father not revealed.

To detail the utter failure of the mother to even remotely effect a minimum rehabilitation is an exercise in judicial frustration. On July 8 and November 5, 1982, the court ordered that the mother shall:

a.  Obtain adequate housing and furnishings to include at least a two bedroom and separate beds for each child;

b.  Undergo a drug evaluation as arranged by the Child Protective Service Worker to include a urinalysis screening complete the day of the next Court hearing at Equilibrium, and she shall obtain adequate treatment as indicated by the evaluation;

c.  Participate with the Visiting Nurses Association;

d.  Participate in a parenting program through ENSHA to include the in home parenting instruction;

e.  Obtain a source of legal income;

    f.   Participate in the financial program at Franklin Community Credit Union and allow them to become the protective payee of her checks and authorize them to pay her bills;

    g.  Dissassociate [sic] herself from [M.J.B., her former live-in boyfriend];

    h.  Cooperate with the workers involved in this case and make herself available to meetings with the workers;

    i.   Have reasonable rights of visitation as arranged by Douglas County Social Services;

    j.   Notify the Court within 24 hours of a change in residence.

The record discloses that the mother has had at least 16 different places of residence in the last 2 years, excluding correctional facilities. At a number of these residences court services officers assigned to the case were not permitted inside the residence, and frequently new addresses were withheld from these workers.

The mother successfully passed infrequent drug screenings, and court workers reported no indications that she was using drugs. However, she continued to live with persons using drugs on a continuing basis, in violation of the court's order. As the Visiting Nurses Association was denied access to her residences, the services of this group were discontinued. The mother's attendance at parenting classes was sporadic, and caseworkers found it difficult to assess her progress in the program due to infrequent contact.

As far as obtaining a legal source of income, the mother worked less than a total of 2 months and had been fired from at least two of the four jobs she did temporarily hold. Although ordered to disassociate herself from M.J.B., her former live-in boyfriend, the mother continued to have contact with this man until shortly before her last arrest in the fall of 1983. The record further reveals that the mother did exercise her visitation rights approximately two-thirds of the allotted times.

After over 2 years of social service, psychiatric and psychological counseling, CETA training, and home visits by the Visiting Nurses Association, the mother, pregnant, incarcerated, without a job and no promise of any, continuing

to associate with persons she was ordered not to associate with, now requests this court to grant yet another round of hearings while the children languish in foster care.

The law is not unmindful of a mother's love, of the crippling effects of a history of child abuse and alcoholic parents, and of the grinding effects of an inferior education and habitual poverty, but the law is also not so cruel that punishment for these apparently unchangeable conditions should be imposed on the children. If the only way to break the chain is termination, the law and this court will not flinch. The only hope for R.H., T.H., and J.H. is termination.

The judgment is affirmed.

AFFIRMED.