IN RE INTEREST OF D.S., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. K.S., APPELLANT.

440 N.W.2d 477

Filed May 26 1989.    No. 88-879.

Janet S. Gurwitch for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and McGINN, D.J.

SHANAHAN, J.

K.S., the mother of the female, D.S., appeals from the judgment of the separate juvenile court of Douglas County, which found that D.S. was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) of the Nebraska Juvenile Code. Section 43-247(3)(a) authorizes a juvenile court's jurisdiction over "[a]ny juvenile . . . who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian . . . ."

In an appeal from an adjudication in a juvenile court under § 43-247(3)(a), the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See, *In re Interest of A.L.G.*, 230 Neb. 732, 432 N.W.2d 852 (1988); *In re Interest of K.L.C. and K.C.*, 227 Neb. 76, 416 N.W.2d 18 (1987). Cf. *Hughes v. Enterprise Irrigation Dist.*, 226 Neb. 230, 410 N.W.2d 494 (1987) (de novo review on the record in the appeal of an equity case). In proceedings for an adjudication under § 43-247(3)(a), the allegations of the State's petition must be proved by a preponderance of the evidence. Neb. Rev. Stat. § 43-279.01(3) (Reissue 1988).

In its petition, the State alleged that D.S., being under the age of 18 years, was a child within the meaning of the Nebraska Juvenile Code and lacked

proper parental care by reason of the faults or habits of [K.S.], natural mother of said child, in that:

A. On or about May 11, 1988, said child was taken into protective custody by Omaha Police after she had been disciplined by being struck with a baseball bat by [K.S.], suffering marks and bruises.

B. [K.S.] is frustrated and confused by said child's "ungovernable" adolescent behavior.

C. Said child is confused and frustrated by [K.S.'] expectations and means of discipline and fears returning home at this time.

Pending an adjudication hearing, D.S. was placed in the temporary custody of the Department of Social Services of the State of Nebraska. At the adjudication hearing, only the child, D.S., testified.

D.S. was 14 years old at the time of the incident alleged in the State's petition, was in junior high, and attended special classes for her learning disabilities. Apparently D.S.' parents were separated from one another. The mother, K.S., worked and also attended school, necessitating her periodic absence from the family home. Although K.S. had talked with D.S. about sexual behavior and warned the child about sexual activity at an early age, D.S. became "sexually active," a source of concern for her mother, who took D.S. to visit a physician and obtain contraceptives. K.S. supplied D.S. with birth control pills.

Because her mother was absent from home for appreciable periods involving work and school, D.S. was frequently left in charge of the house and babysat her 10-year-old brother. On such occasions, D.S. was responsible for fixing meals and taking care of other household chores, although those activities impinged on D.S.' time available for homework in view of her scholastic difficulties. As D.S. expressed: "I barely passed last year."

When D.S. was in charge of the house, there was a definite and longstanding rule which had been imposed by K.S.: D.S. was forbidden to have her boyfriends in the house during K.S.' absence. D.S. understood the rule, but not the reason for the rule. On occasions when D.S. broke the rule of "no boyfriend in the house," K.S. never corporally punished D.S., but did "ground" the girl, that is, confined D.S. to the child's room, or gave her more housework as punishment.

On May 11, K.S. gave D.S. the key for the house while K.S. attended school. During her mother's absence, D.S. invited her boyfriend into the house, where the couple engaged in sexual intercourse. When K.S. returned around 5 p.m., D.S. had to unlock the door for her mother. As K.S. entered the house, D.S.' boyfriend "jumped off the roof because he was scared." K.S. grabbed D.S. by the arm and, with a "foot long" wooden "bat," hit D.S. three or four times above the child's knees, causing some "welts" or marks which became "bluish."

Concerning the "bat," we conclude that this item was a miniature replica of a baseball bat, perhaps similar to those available as souvenirs at ball parks. In any event, there is no photograph of the bat or the marks on D.S.' legs as the result of the physical punishment administered by K.S. The record contains no reference to medical treatment for D.S. or any medical diagnosis on account of the "bat" incident. However, the next day at school, one of D.S.' teachers noticed the marks on the child's legs.

According to D.S., she was "shocked," since her mother had never previously administered corporal punishment, except for a slap on the hand, for any misconduct. In reference to the incident in question, D.S. described herself as "angry" and said that she wanted to leave the family home because "I was sort of like hard-headed at the time and I didn't want to accept her [K.S.'] rules and stuff." D.S. manifested her reluctance to return to her family home with K.S. "because I was scared and I didn't know what was going to happen or not."

The specter of child-battering by a baseball bat, hyperbolically alleged in the State's petition, paled and then vanished in the light of testimony or disappeared into the dark depths of unproved allegations. If merely parental frustration and confusion in rearing an adolescent were blameworthy bases to bring a child within the purview of the Nebraska Juvenile Code, a great number of parents would find themselves exposed to governmental intrusion into raising their children. In our de novo review, we find that the State has failed to establish that D.S. is a child "who lacks proper parental care by reason of the fault or habits of" her mother, K.S. Therefore, we reverse the judgment of the juvenile court and remand this matter to the juvenile court with direction to dismiss the State's petition.

REVERSED AND REMANDED WITH
DIRECTION TO DISMISS.