IN RE INTEREST OF C.C. AND E.C., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. M.C., APPELLANT.

450 N.W.2d 392

Filed January 19, 1990.   No. 88-830.

Gene T. Oglesby, of Oglesby, Brown, Thomas, Peterson & Orton, for appellant.

James A. Elworth, Deputy Lancaster County Attorney, for appellee.

Richard Douglas McClain, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The appellant is a mother whose parental rights to her two children, born March 20, 1981, and May 11, 1982, were terminated by an order of the separate juvenile court of Lancaster County, Nebraska, on September 6, 1988. She

contends that the trial court erred in finding that the evidence was clear and convincing that she had substantially and continuously or repeatedly neglected the children and refused to give the children necessary parental care and protection, that she failed to comply with the reasonable provisions of the court-ordered plan, and that termination of her parental rights was in the best interests of the children.

Only the mother's parental rights are involved in this appeal. The father's parental rights to the children were terminated by relinquishment.

On October 27, 1983, a petition was filed alleging that the children were lacking proper parental care by reason of the faults and habits of their parents, as provided in Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982). The petition specifically alleged that the children lacked a stable home, having lived in at least eight different locations since May 1983, that the mother had failed to provide adequate food for the children, and that the parents had failed to provide proper medical attention for the children since at least May 1983.

At an adjudication hearing held on November 15, 1983, the trial court found that the allegations of the petition were true and that the children were children as defined in § 43-247(3)(a).

Following a dispositional hearing on November 29, 1983, temporary legal custody of the children was placed with the Nebraska Department of Social Services (DSS), with physical care remaining with the mother subject to the parents' correcting the conditions of neglect under the plan approved by the court. That plan required that the mother (1) stabilize her living situation, not remove the children from Lancaster County, Nebraska, without prior approval of the court, and not leave Lancaster County unless she has made adequate arrangements approved by the court for the care of the children; (2) cooperate with the workers on the case; (3) provide appropriate medical care for the children and follow through with instructions from the doctor; (4) provide for the children's nutritional needs; (5) make the whereabouts of the children and herself known to the caseworker at all times; and (6) follow the directions of the caseworker regarding the care of the children.

At a review hearing on February 15, 1984, at the request of

the mother the trial court authorized DSS to place the children in foster care at any time upon the request of the mother.

The mother failed to attend the review hearing held on May 29, 1984. Testimony showed that she was not attending day treatment for alcoholism at the Independence Center and that on May 16, 1984, she had been seen with the children in York, Nebraska, in violation of the November 29 order. The court's plan at the time of the May 29 hearing required the mother (1) complete alcohol treatment as recommended by the counselor at the Independence Center; (2) keep Child Protective Services informed of all persons living in the same home with the children or providing care to the children; (3) follow the directions and recommendations of the public health nurse, homemaker, and caseworker regarding the care and discipline of the children; (4) not use physical discipline on the children and not allow the children to be physically disciplined by others; (5) provide for the children's nutritional needs; (6) provide appropriate medical care for the children and follow through with instructions from the doctor or the public health nurse; (7) make the whereabouts of the children and herself known to the caseworker at all times; (8) not drink alcoholic beverages or use drugs or allow other persons to drink alcoholic beverages or use drugs in the presence of the children; (9) keep the children in day care arranged by the caseworker; (10) provide transportation to day care, alcohol treatment, and medical appointments to the extent able; (11) not take the children from Lancaster County without prior approval of the caseworker or the court; (12) keep her living situation stable; and (13) participate in PACT parental training.

On June 20, 1984, the mother voluntarily placed the children in foster care. The children have remained in foster care with the same family since that date.

On November 27, 1984, the matter was again reviewed. The court further ordered the mother to visit with the children on a regular basis, to continue activity and regular involvement with the parenting program at Servant House, to be actively involved in the alcohol program through the Lincoln Indian Center, to obtain inpatient treatment recommended by the Indian Center, and not to leave the children in the care of others

during her visitation.

The next hearing was on February 6, 1985. There was testimony concerning alleged sexual contact between the older child and the mother's live-in boyfriend. The mother testified she did not believe her daughter's version of the incident, but admitted she had told the caseworker that if necessary, she would give up the children in order to remain with the boyfriend. At a further hearing regarding the touching incident, the trial court continued the previous order and further ordered the mother and her boyfriend to follow through with counseling at Child Guidance Center on a regular basis or at a comparable professional agency approved by the caseworker.

The matter was again reviewed, at a hearing on August 26, 1985. The predispositional report submitted by the caseworker showed the mother had reported to the police in June 1985 that an ex-boyfriend had sexually assaulted her in front of the children at her residence. Despite this incident, the mother wanted to remain friends with her assailant.

This incident led to problems between the mother and her boyfriend who was involved in the touching incident. Apparently, these problems caused the mother to miss a scheduled visit with the children and to return all of the children's toys and clothes to the foster home, telling the foster family that she could no longer cope with the children and that she felt the children would be better off with them.

Despite these incidents, the trial court was in the process of authorizing a 2-week trial placement of the children with the mother, when she abruptly left the courtroom after the court stated the trial placement would be monitored and subject to change. As a result of her leaving the courtroom, there was no trial placement or change in disposition.

At the September 19, 1985, hearing, the mother testified she was involved in alcohol counseling at the Indian Center and counseling at family services. She also expressed an interest in becoming involved in the PACT parental training program. In addition to the conditions imposed in previous orders, the court authorized DSS to provide extended visits and trial placement and ordered the mother to be actively and regularly involved in

the spouse abuse program, as well as any other counseling recommended by family services, to participate in the PACT program, and to report any statements and comments by the children concerning neglect or sexual contact by anyone with the children.

At the March 19, 1986, review hearing, the final report prepared by the PACT staff regarding the mother's 5-month participation in the program was received in evidence. The report indicated that the mother routinely placed her own needs above those of her children and that she was unrealistic in her expectations of both children and unable to protect her children from potentially dangerous situations and dangerous individuals. The report concluded that because of her lack of insight and her inability to recognize the practical realities involved in adequate parenting, it was unlikely that she would ever be capable of meeting her children's developmental and basic custodial needs on a routine or daily basis, even when closely monitored by community representatives.

Other evidence showed the mother had moved three times since the last court hearing, in September 1985, and had plans to move again in the near future. It was established that the mother had quit attending alcohol and chemical dependency counseling at the Indian Center in December 1985 and had not become reinvolved in any other chemical dependence program despite having taken an overdose of 25 "downers" in January 1986. At this time, the trial court continued the previous order and also ordered the mother to enter a treatment program to correct her dependency problems and the problems PACT had found to exist.

At the review hearing on September 22, 1986, there was evidence that the mother was psychotic. The predispositional report showed the mother had moved seven times since the last hearing. The trial court added to its previous orders that the mother involve herself in therapy for her mental illness and follow all recommendations of her therapist and that she begin a new PACT program and cooperate in any training assessment that may be recommended by the program or DSS.

At the March 24, 1987, review hearing, the trial court found that there had been no change, and no new orders were made.

On May 12, 1987, the mother testified she would permit the trial court to allow the children to move to Colorado with their foster family. The trial court approved the children's move, but also ordered DSS to continue to work on a plan to provide permanent placement of the children with the mother or if that was not possible, with an appropriate family.

At the November 16, 1987, review hearing, the mother requested the children be returned to Lincoln. The trial court found she had not furnished proof that she had corrected her problems and did not order the return of the children.

At the review hearing held on March 21, 1988, the mother testified that she had been sexually assaulted in early January by her ex-brother-in-law, but did not report this incident to the police. As a result of this assault, her boyfriend beat her up, causing her to go to Lincoln General Hospital for treatment. Despite this physical abuse, which the mother testified was not the first such assault by the boyfriend, she still planned to move in with him.

The mother requested the children be returned to Lincoln. The trial court ordered the children be returned at the end of the school year and continued its order of March 24, 1987.

On April 7, 1988, the guardian ad litem filed a petition to terminate the mother's parental rights based on Neb. Rev. Stat. § 43-292(2) (Reissue 1988), in that the mother had substantially and continuously or repeatedly neglected the children and refused to give the children the necessary parental care and protection to which they were entitled, and on § 43-292(6), in that reasonable efforts under the direction of the court had failed to correct the conditions leading to the determination that the children were children as defined by § 43-247(3)(a).

The petition for termination of the appellant's parental rights was heard on 7 separate days commencing June 1 and ending August 25, 1988. At the request of the guardian ad litem and the county attorney, and with no objection by the appellant's counsel, the trial court took judicial notice of all prior evidence, records, and proceedings in the case. The following were the principal witnesses who testified: Cindy Kadavy, a former employee of Friendship House; Diane Sundermeier, an outpatient counselor at the Indian Center; Dr. Chin S. Chung,

the psychiatrist who had been treating the appellant since April 1986; Cindy Peterson, a public health nurse who had treated the children beginning in December 1983; Debra Carlson, who had supervised the appellant in the vocational rehabilitation program; Linda Belford, a caseworker with DSS who had been the appellant's caseworker since November 1983; Rhonda James, the children's foster mother; Melinda Luers, a counselor at Child Guidance Center; Ann Hopkins, one of the appellant's PACT trainers; Bertine Loop, another PACT trainer; and the appellant.

The evidence was in substance a recapitulation of what had gone on before and described in detail the appellant's failure to comply with the orders of the trial court and demonstrate that she could be a satisfactory parent for the children.

The trial court found the appellant had failed to visit the children on a regular basis; that she visited with the children in Colorado less often than was possible, even though transportation was available from DSS; that on one visit in Colorado, one of the children became ill, and the mother brought her back to the foster family rather than care for the child herself; that the mother was directed to complete the parental training program called PACT and that she participated in the program on two different occasions, but was unable to successfully complete the program; that the mother had not stabilized her living environment and her personal situation so as to demonstrate that she could care for herself and also care for the children; that the mother had been offered numerous services in an attempt to enable her to correct the neglect; that the mother was still in need of services, and it was uncertain how soon she would have her own problems corrected sufficiently to start to care for the children; that the children had lived longer with their foster family than they had with their mother, and removing them from the loving and nurturing home of the foster family and returning them to uncertain care in Lancaster County would be harmful to the children; and that the evidence was clear and convincing that grounds under § 43-292(2) and (6) exist to terminate the parental rights of the mother, and it was in the best interests of the children that the parental rights be terminated.

Orders terminating parental rights are reviewed by the Supreme Court in accordance with the following rule:

> " ' "In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another." ' "

*In re Interest of R. T. and R. T.*, 233 Neb. 483, 486, 446 N.W.2d 12, 15 (1989); *In re Interest of S.C., S.J., and B.C.*, 232 Neb 80, 439 N.W.2d 500 (1989); *In re Interest of P.M.C.*, 231 Neb. 701, 437 N.W.2d 786 (1989); *In re Interest of P.D.*, 231 Neb. 608, 437 N.W.2d 156 (1989).

The appellant argues that she had shown progress in her parenting skills and had stabilized her living situation since Dr. Chung began treating her with Dilantin and that it was error for the court to terminate her parental rights in light of that evidence. The record does not support her contention.

Even after her treatment with Dilantin began, the appellant continued to be involved with men who physically and sexually abused her. She was involved for the second time in the PACT parental training program, but failed to show any improvement in her ability to successfully parent her children. She moved three times in the 4 months prior to the filing of the petition to terminate. Dr. Chung testified that it could take 2 to 3 years of continued treatment for the mother to reach the necessary level of stability and self-esteem to function in society and expressed no opinion concerning the best interests of the children. During this time period, the appellant discussed relinquishing her rights to the children.

There is an abundance of clear and convincing evidence in the record that shows the appellant refused and neglected to give the children necessary parental care and protection and failed to make reasonable efforts to comply with the trial court's orders concerning a plan of rehabilitation.

Throughout the entire time that the proceedings were pending in the trial court, the appellant, on numerous

occasions, demonstrated hostility and defiance to the efforts of the trial judge and other personnel who were attempting to assist her to become a satisfactory parent. Her attitude was one of indifference to the welfare of the children when some personal concern of hers interfered. As the appellant said to Ann Hopkins at one time, "I tell someone I'm going to do something, I do that first. . . . My commitments come first. . . . Of course, I have a commitment to my children, too, in a way. But they get along without me so easily, they don't really need me most of the time."

Her neglect of the children ranged from a failure to give the children adequate food and hygiene care to a failure to dress them adequately.

A parent's failure to make reasonable efforts to comply with a court-ordered plan of rehabilitation presents an independent reason justifying termination of parental rights. *In re Interest of J.H. et al.*, 233 Neb. 338, 445 N.W.2d 599 (1989). A judgment terminating parental rights will be affirmed when the State has established by clear and convincing evidence that the parent has willfully failed to comply, in whole or in part, with a material provision of the plan, and termination of parental rights is in the best interests of the children. *In re Interest of R.T. and R.T., supra*. In this case the evidence is clear and convincing.

Since 1983 the appellant has been involved in a variety of programs in an effort to correct the conditions which led to the State's involvement in this case. "Where a parent is unable or unwilling to rehabilitate herself within a reasonable time, the best interests of the children require termination of the parental rights." *In re Interest of J.H. et al., supra* at 347, 445 N.W.2d at 605.

The evidence shows that the appellant has not been able to stabilize her living situation. It is doubtful that she ever will be able to do so. "Children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity." *Id*. at 347-48, 445 N.W.2d at 605. The children have been in foster care with the same family since June 20, 1984, and that family is willing to permanently adopt the children.

The children deserve the security of a permanent home and

the opportunity to have a better life than the appellant would provide. As this court stated in *In re Interest of R.H., T.H., and J.H.*, 219 Neb. 904, 907, 367 N.W.2d 145, 147 (1985):

> The law is not unmindful of a mother's love, of the crippling effects of a history of child abuse and alcoholic parents, and of the grinding effects of an inferior education and habitual poverty, but the law is also not so cruel that punishment for these apparently unchangeable conditions should be imposed on the children. If the only way to break the chain is termination, the law and this court will not flinch.

The judgment is affirmed.

AFFIRMED.