IN RE INTEREST OF L.K.Y. AND A.L.Y., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. J.S., APPELLANT.

455 N.W.2d 828

Filed June 1, 1990.   No. 89-763.

Joseph Lopez Wilson for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

Robert L. Freeman, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The appellant is a mother whose parental rights to her two daughters, born September 25, 1977, and April 11, 1979, were terminated by an order of the separate juvenile court of Douglas County, Nebraska, on June 13, 1989. She contends that the trial court erred in finding that she failed to comply with the court-ordered rehabilitation plan and that the termination was in the best interests of the minor children.

The father's parental rights were terminated in 1985. His parental rights are not involved in this appeal.

On April 7, 1982, a petition was filed alleging that the

children were lacking proper parental care by reason of the faults or habits of their parents, as provided in Neb. Rev. Stat. §§ 43-202(2)(b) and 43-209(2) (Reissue 1978). The children had been taken into custody by law enforcement authorities because they had been left alone and locked in a bathroom of a downtown Omaha hotel for a prolonged period of time. The petition alleged that the children had been left alone on numerous occasions; that the appellant had failed to provide a permanent and stable residence for herself and the children; that the appellant had failed to provide adequate food supplies and regular meals for herself and the children; that the children had been observed in dirty and inadequate clothing and with their bodies in need of bathing; and that the appellant and the children had been observed residing in a house found in a complete state of disarray. At the adjudication hearing on May 27, 1982, the mother admitted to most of the allegations of the petition, and the court found the children to be within the meaning of §§ 43-202(2) and 43-209(2).

The children were placed together in foster care on April 2, 1982, and their temporary legal custody was awarded to Douglas County Social Services, and it has remained with social services throughout these proceedings.

Following the disposition hearing on July 12, 1982, the mother was ordered to comply with a plan of rehabilitation which required her to (1) undergo scheduled psychiatric evaluations and subsequent treatment indicated by the evaluation; (2) obtain and maintain a stable living environment for herself and her children which includes adequate housing, furnishings, and food; (3) obtain employment; (4) attend parenting classes; (5) be granted reasonable rights of visitation as arranged by Douglas County Social Services; (6) notify the court within 24 hours of a change of residence; and (7) cooperate with the workers involved in the case. Further review hearings with some adjustments in the rehabilitation plans which were ordered were held on October 19, 1982; January 19, April 19, and October 19, 1983; March 1, September 12, and December 12, 1984; March 26, 1985; August 28, 1987; and January 21, July 19, and November 21, 1988. All of the plans generally included the provisions required in the plan of July

12, 1982.

The record shows that the appellant generally exercised her visitation with the children, but failed to fully comply with those provisions of the plan directed at correcting the situation which led to the court's involvement with her children. The record shows that she did not successfully complete any psychiatric therapy she participated in and that although she participated in a parenting program through August 1984, her attendance was sporadic, and the program facilitator felt there was an indefinite need for the mother to attend. She worked with an in-home parenting assistant from May 1 to June 12, 1984, when the assistant discontinued involvement because of noncooperation from the mother. She moved 14 times from April 1982 to June 1985. Until she obtained employment as a receptionist for a fencing company in June 1984, the mother was unable to maintain a stable source of income. The service personnel involved in the case experienced problems with the mother's cooperation in the services and advice they provided.

In late 1984, the mother had maintained the same residence and held the same job for several months, and extended visits were authorized. On January 2, 1985, the children were returned to the mother's home.

During the time the children lived with their mother, the social workers continued to monitor the placement. The record shows that the mother lost her job and had difficulty in managing with the children. In June 1985, the mother admitted that she could not properly care for her children and decided to relinquish custody of them.

The mother signed relinquishments, and both children were placed with their preadoptive family.

In August 1986, the mother changed her mind about the adoption and revoked the relinquishments. She contends that she only signed the relinquishments and consents to adopt because she thought it would be an open adoption.

From June 1985 until December 1988, the mother continued to visit her children; however, she was unable to maintain a stable residence or stable employment. She also confronted the children about their feelings and discussions with psychologists, social workers, and their foster family.

In December 1988, the mother moved to New York City, has not seen the girls since then, and does not plan to return to Omaha.

On April 4, 1989, the county attorney filed a motion for an order terminating the mother's parental rights to the children on the ground that reasonable efforts, under the direction of the court, failed to correct the conditions leading to the determination that the children were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). Following a 2-day hearing on the motion to terminate, the trial court found that the allegations of the motion, as amended, were true; that the children were within the meaning of Neb. Rev. Stat. § 43-292(6) (Reissue 1988); and that it was in the best interests of the children that the parental rights of the mother be terminated.

As recently stated in *In re Interest of C.N.S. and A.I.S.*, 234 Neb. 406, 407-08, 451 N.W.2d 275, 277 (1990):

> In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but where the evidence is in conflict, the Supreme Court considers and may give weight to the trial court's observation of the witnesses and acceptance of one version of the facts rather than another. [Citations omitted.]

> The juvenile court has discretionary power to prescribe a reasonable plan for parental rehabilitation to correct conditions underlying the adjudication that a child is a juvenile within the juvenile code. [Citations omitted.] A parent's failure to make reasonable efforts to comply with a court-ordered plan of rehabilitation designed to reunite the parent with the child presents an independent reason justifying termination of parental rights. [Citations omitted.]

> A judgment terminating parental rights pursuant to Neb. Rev. Stat. § 43-292(6) (Reissue 1988) will be affirmed where the State has proved by clear and convincing evidence that (1) the parent has willfully failed

to comply, in whole or in part, with a material provision of the rehabilitative plan, and (2) termination of parental rights is in the best interests of the children. [Citations omitted.]

Although the mother has a high school education and some postsecondary education or training, she has been unable to maintain steady employment. Her own troubled childhood may have contributed to her inability to adequately parent her children; however, despite numerous psychiatric evaluations, parenting classes, an in-home parenting program, group counseling, and individual therapy, the mother lacks the fundamental understanding of what is necessary to be an adequate parent for her children. During the course of these proceedings, she had at least 34 residence changes.

The mother has been under rehabilitation plans since 1982 to correct the conditions which led to the State's involvement in this case. " 'Where a parent is unable or unwilling to rehabilitate herself within a reasonable time, the best interests of the children require termination of the parental rights.' " *In re Interest of C.C. and E.C.*, 234 Neb. 218, 226, 450 N.W.2d 392, 397 (1990) (quoting *In re Interest of J.H. et al.*, 233 Neb. 338, 445 N.W.2d 599 (1989)).

The evidence shows that the mother has not been able to stabilize her living and employment situation and that she lacks insight into the needs of her children. " 'Children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity.' " 234 Neb. at 226, 450 N.W.2d at 397 (quoting *J.H., supra*).

The children have now been in foster care with the same family since June 1985. That family is willing to permanently adopt the children, and the children already consider themselves part of that family and want to remain with them. The children testified in chambers that they did not want to leave their foster family, even if it meant they would never see their mother again.

The children need the security of a permanent home and the opportunity to have a better life than the mother can provide. The evidence clearly and convincingly establishes that it is in the best interests of the children that the parental rights of the

appellant to her two children be terminated.
The judgment is affirmed.

AFFIRMED.