IN RE INTEREST OF D.D.P., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. L.P. AND V.P., APPELLEES, AND REGINA T. MAKAITIS, GUARDIAN AD LITEM, ON BEHALF OF D.D.P., APPELLANT.

458 N.W.2d 193

Filed July 20, 1990.    No. 89-1221.

Regina T. Makaitis, guardian ad litem, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from an August 29, 1989, adjudication order of the separate juvenile court of Douglas County finding D.D.P., born March 12, 1978, to be a juvenile within the purview of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). The child's parents did not contest jurisdiction of the juvenile court on the basis stated, but the guardian ad litem for the minor child timely appealed the order, on behalf of the child. We reverse the adjudication order of the juvenile court.

A petition was filed on June 15, 1989, alleging that the child comes within the meaning of Nebraska Revised Statutes, 1943, Section 43-247(3a), being under the age of eighteen years, homeless or destitute, or without proper support through no fault of [the] parents of said child, in that:

A. Said child displays severe behavior problems, including threats and acts of violence.

B. [The parents of said child] are unable to adequately provide for his needs due to these behaviors.

When the adjudication hearing was held, the child was in the care of the Department of Social Services, pursuant to a detention order of the juvenile court. Although the transcript of the detention hearing is not in the record, the record before us indicates that neither the parents nor the child's guardian ad litem resisted detention when that matter came on for hearing on June 26, 1989.

On August 29, 1989, the guardian ad litem, counsel for the State, and the child's parents with their counsel were present at the adjudication hearing to determine whether the child was a juvenile under § 43-247(3)(a). Before the hearing began, the guardian ad litem moved that the matter be continued to a later date, so the child could be present to enter a plea. The motion was denied. The guardian ad litem, on the child's behalf, then attempted to offer a plea denying the petition's allegations that concerned the child's behavior. The court refused to accept the guardian's plea on behalf of the child, stating that the petition

was directed against the parents, not the child, and that the court knew of no reason why the child would respond to a petition in which no charges were alleged against him.

The record indicates that the parents had been apprised of their rights at the time of the detention hearing. At the adjudication hearing, the parents admitted the jurisdictional allegations contained in the petition. As a factual basis for the pleas, the father recited two instances in which he and his wife were unable to cope with the child's behavioral problems. The father reported one occasion where the child allegedly poured alcohol in an infant's bottle, from which the infant then drank. On another occasion, when the child was receiving counseling at a psychiatric hospital, he allegedly became verbally and physically violent, flipped over a table, hit a counselor in the stomach, and insulted his father.

The court received two exhibits as additional support for the parents' pleas. One exhibit, a hospital discharge summary, showed that the child was admitted on April 12, 1989, to Lutheran Medical Center to be treated for depression, and was discharged on May 26, 1989. This summary showed the child had a history of "suicidal ideation and recently jumped into twelve feet [sic] water in an attempt to drownd [sic] himself." The summary referred to other actions of the child which were dangerous to himself or others, and further set out that at the time of his admission, the child "was mildly agitated and looked very sad." A report of a psychological evaluation conducted when the child was admitted to the hospital was also received by the court. The evaluation supported the conclusions of the discharge summary.

Based on the parents' admissions, the factual basis of the father's testimony, and the two exhibits, the court accepted the pleas, found that the child was within the meaning of § 43-247(3)(a), and set the matter for disposition. The guardian ad litem appeals, alleging that the juvenile court erred (1) in refusing to accept a plea of denial on the child's behalf, (2) in holding an adjudication hearing without the child's being present, (3) in failing to accord the child an evidentiary hearing, and (4) in determining that a preponderance of the evidence established that the child was within the meaning of

§ 43-247(3)(a).

The first three assignments of error can be summarized as contending that the adjudication under § 43-247(3)(a), without permitting the child to attend or at least to enter a plea, denied the child his right of procedural due process. As stated previously, the court rejected a plea of denial offered by the guardian ad litem on behalf of the child. The procedures for an adjudication of a petition filed under § 43-247(3)(a) are set out in Neb. Rev. Stat. § 43-277 (Reissue 1988). Although that section does not provide a child with a procedure whereby he can respond to allegations brought against his parents under § 43-247(3)(a), § 43-277 does require the appointment of a guardian ad litem for the child in such proceedings.

The role the guardian ad litem plays in § 43-247(3)(a) cases is not specifically set out by statute, nor has it been specifically determined by this court. However, with respect to a proceeding involving the termination of parental rights, we have stated: " 'Generally speaking, a guardian ad litem appears to be an individual who steps into the position of the minor and, after considering the alternatives, asserts the right of the minor as the guardian ad litem sees fit. . . .' " *In re Interest of M.M., C.M., and D.M.*, 230 Neb. 388, 389, 431 N.W.2d 611, 612 (1988). We see no reason why the guardian ad litem's basic role would be any different in cases involving jurisdictional proceedings filed under § 43-247(3)(a).

Appellant contends that the child should have been provided an opportunity to enter a plea. Appellant correctly points out that had a petition been brought under § 43-247(3)(b) by reason of the child's being "wayward or habitually disobedient [and] uncontrolled by his or her parent," the child would have been afforded an opportunity to respond to the allegations concerning his conduct in satisfaction of the requirements of due process. See Neb. Rev. Stat. § 43-279 (Reissue 1988). An adjudication under § 43-247(3)(b) involves allegations of juvenile misconduct akin to a criminal proceeding. As such, the proceedings clearly require the procedural safeguards set out in § 43-279, allowing the child an opportunity to respond to the allegations directed at him or her.

An adjudication under § 43-247(3)(a), on the other hand, as

in this case, involves allegations that the juvenile was homeless or destitute, or without proper support through no fault of the juvenile's parents. The allegations of conduct concern the activities of the parents, not the juvenile. In that situation, the parents must respond to the charges. See *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986). Therefore, in proceedings under § 43-277, the child is not required to enter a plea. Unlike under § 43-247(3)(b), allegations filed pursuant to § 43-247(3)(a) are not directed at the child, but instead are directed at the parents. In this case, the trial court did not err in denying the juvenile the right to enter a plea.

Further, we cannot say that the court erred in not permitting the child to be present at the adjudication hearing. Such a determination is within the discretion of the juvenile court. Where the child is an infant or incompetent, there would not be the necessity that the child be present. In this case, the presence of the child might have exacerbated the bad feelings between the child and his parents. The court did not err in this regard.

This is not to say that children are without legal rights which must be protected in proceedings under § 43-247(3)(a). The child is vitally concerned in any such proceedings, and, while it is generally presumed that parents act in the best interests of their children, it is conceivable that the best interests of the child are not always what the parents contend. See *Parham v. J.R.*, 442 U.S. 584, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979).

In participating in § 43-247(3)(a) proceedings and asserting the rights of the minor, the guardian ad litem is entitled to investigate the allegations and prepare a report to the court. The guardian ad litem is also entitled to participate fully in the proceedings before the court in both adjudication and disposition hearings.

The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests. *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988).

The State's jurisdiction "arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine the status and custody that will best meet its needs and wants . . . .

" . . . .

"The juvenile court is a product of the solicitude of the law for the welfare of infants. Its powers and duties are described more or less in detail in our statutes, and because of their humanitarian and beneficient [sic] purpose, they should be liberally construed to the end that their manifest purpose may be effectuated to the fullest extent compatible with their terms."

*In re Interest of R.A. and V.A.*, 225 Neb. 157, 168, 403 N.W.2d 357, 365 (1987). A guardian ad litem appointed under § 43-277 to represent a juvenile affected in a § 43-247(3)(a) proceeding must be given the right to participate meaningfully in the § 43-247(3)(a) adjudication.

In this proceeding, the guardian ad litem did participate and ultimately appealed the case. The trial court did permit the guardian ad litem to participate and did not err in that regard.

The fourth assignment of error has merit and requires reversal. The section of the juvenile code on which the court relied in its adjudication, § 43-247(3)(a), provides, in part, that the juvenile court shall have jurisdiction of "[a]ny juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent . . . ."

The question presented is whether a preponderance of the evidence establishes that the child is a juvenile who is homeless or destitute or without proper support of his parents, within the meaning of § 43-247(3)(a), because the child needs help which the parents cannot supply.

In an appeal from an adjudication in a juvenile court under § 43-247(3)(a), the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*In re Interest of D.S.*, 232 Neb. 345, 346, 440 N.W.2d 477, 478 (1989). We note that the *D.S.* case was concerned with a different portion of § 43-247(3)(a), concerning a child alleged

to be one lacking proper parental care "by reason of the fault or habits of his or her parent . . . ."

The record shows that the child was physically abused by his biological mother and sexually abused by a relative prior to being adopted, at the age of 5, by his parents appearing in this case. Evidence shows that the child has severe emotional problems. A psychological evaluation indicated that the child reported experiences of visual and auditory hallucinations and that he has a conduct disorder. During his 6 weeks of hospitalization, the child was diagnosed as having an identity disorder, dysthymia, enuresis, and oppositional defiant disorder, and he was placed on the medication imipramine. According to the hospital discharge summary, the child exhibited numerous problems with aggression throughout the period of his hospitalization.

The State contends that the parents lack insight into the child's emotional problems and this lack of insight frustrates their efforts to either grasp or cope with their child's behavior. Their inability to understand the nature of the child's behavior causes the parents to react in an authoritarian manner. It appears that the child had complex problems and that his parents were unaware of those problems and were incapable of responding to his particular needs.

The dispositive fact in this appeal is that the record does not set out any factual basis for the acceptance of the parents' admissions at the adjudication hearing in the juvenile court. As set out above, the father's testimony as to the factors showing the parents could not cope with the child's behavior was (1) that the child had put alcohol in an infant's bottle, from which the infant then drank, and (2) that D.D.P. had become physically and verbally violent at the psychiatric hospital, toward both his father and hospital personnel.

These factors might well support a determination that the parents, through no fault of their own, cannot properly handle their child, and, therefore, the child was lacking "proper support through no fault of his parents," within the meaning of § 43-247(3)(a). Both of these incidents, however, occurred either before or during the child's treatment at the hospital and are referred to in the discharge summary and psychological

report.

Specifically knowing those factors, and after specifically recognizing the parents' inabilities, the physician concluded in the discharge summary:

> At the time of discharge, he [the child] will be taking Imipramine 75mg po qhs. We will send him back to the adoptive parent home to re-attend school, take his Imipramine and be followed in the office in individual therapy. We have recommended the family be involved in family therapy . . . .

Included in the psychological report given to the physician who prepared the discharge summary is the sentence "Family therapy is indicated for this boy to see what dynamics exist within the family." There can be no doubt that after 6 weeks of treatment, the physician believed the child should be returned to his family. There is nothing in the record, based on facts occurring after the child's discharge, to the contrary.

The child was discharged on May 26, 1989. A petition was filed in juvenile court on June 15, 1989. There is no testimony of any occurrences between those two dates. Nevertheless, the juvenile court's order of August 29, 1989, provided, in part, that "said child should remain in the temporary custody of Nebraska Department of Social Services for appropriate care, education and maintenance . . . ."

Such order is not supported in any way in the medical testimony before the juvenile court. After 6 weeks of treatment, the physician determined the child should be sent back to his parents, not placed in the custody of the department. Yet, according to the petition, the child was in the custody of the Department of Social Services when the petition was filed on June 15. There could have been incidents in the time between May 26 and June 15 that would establish a factual basis for the admissions and would justify the court order, or perhaps a psychological evaluation would indicate the parents are incapable of responding to the child's needs, but such evidence is not in the record before us.

In light of the undisputed reports before the court, the two incidents arising before the child was discharged from the hospital do not provide a sufficient factual basis for the court's

order.

Since there was no evidence to support the juvenile's adjudication, that order of adjudication is reversed.

REVERSED.