IN RE INTEREST OF D.S. AND T.S., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. D.S., APPELLANT.

461 N.W.2d 415

Filed October 19, 1990.    No. 89-1379.

Gerald M. Stilmock, guardian ad litem for mother, of Tessendorf, Milbourn, Fehringer, Stilmock & Peetz, P.C., and James C. Stecker, of Robak & Stecker, for appellant.

414

Stan A. Emerson, guardian ad litem for children, of Luckey, Sipple, Hansen, Emerson & Schumacher, and William H. Kurtenbach, Platte County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Finding that D.S. was unable to discharge her parental responsibilities by reason of her mental condition and by virtue of her failure to comply with ordered plans of rehabilitation, the county court, sitting as a juvenile court, terminated her parental rights in and to her minor son, T.S., and minor daughter, D.S., finding such action to be in the best interests of each of the children. The father's parental rights in and to the children were also terminated, but he has not appealed. The mother, however, assigns 11 errors to the court below, which, in summary, claim that it erred in (1) admitting certain evidence, (2) limiting the participation of her guardian ad litem, and (3) finding the evidence sufficient to support its conclusions. We affirm.

In connection with the first summarized assignment of error, the mother argues that the court below admitted into evidence certain psychological and psychiatric opinions without proper and sufficient foundation and further received in evidence several hearsay exhibits.

While the Nebraska Evidence Rules do not apply in parental rights termination cases, due process requires that fundamentally fair procedures be employed. *In re Interest of P.D.*, 231 Neb. 608, 437 N.W.2d 156 (1989). Therefore, this court requires that psychological evidence be based on reasonable psychological certainty and that psychiatric evidence be based on reasonable psychiatric certainty. See *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988). Hearsay evidence is not admissible in such proceedings because the admission of such evidence would violate the parent's due process right to cross-examine adverse witnesses. *In re Interest of P.D., supra*.

The improper admission of evidence by the trial court in a parental rights termination proceeding does not, however, in

and of itself, constitute reversible error, for, as long as the appellant properly objected at trial, this court will not consider any such evidence in its de novo review of the record. *In re Interest of P.D., supra; In re Interest of D.L.S., supra.*

The second summarized assignment of error arises from the restrictions the court below placed on the guardian ad litem's participation in the case. The record reflects that the guardian was not allowed to raise objections directly but, instead, had to pose them through the mother's attorney. Nor was the guardian permitted to ask questions at the deposition of a psychologist. In addition, he was limited in his questioning at trial.

It is clear that an attorney acting as an advocate fulfills a different role than does one acting as a guardian ad litem. While Canon 7 of the Code of Professional Responsibility requires a parent's attorney to zealously represent the wishes of the parent, a guardian ad litem is to determine the best interests of the parent without reference to the parent's wishes. *In re Interest of M.M., C.M., and D.M.*, 230 Neb. 388, 431 N.W.2d 611 (1988). Thus, a guardian ad litem might well seek the admission or exclusion of different evidence than would the advocate for a parent.

This court recently held that a guardian ad litem appointed to represent a juvenile affected in a Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) hearing is entitled to participate fully in adjudication and disposition hearings. *In re Interest of D.D.P.*, 235 Neb. 864, 458 N.W.2d 193 (1990). Accord *In re Interest of R.W., post* p. 420, 461 N.W.2d 545 (1990). There is no reason this rule should not apply as well to guardians ad litem appointed for a parent pursuant to Neb. Rev. Stat. § 43-292(5) (Reissue 1988). Therefore, it was error for the court below to have prevented the guardian from fully participating in these proceedings.

However, the mother has made no showing that she was prejudiced by this error. No showing has been made as to what would have been admitted or kept out of evidence had the guardian ad litem been allowed to examine the psychologist who testified by deposition, or had he been permitted to fully examine at trial and directly pose objections.

The foregoing determinations compel us to consider the

third assignment of error, which challenges the sufficiency of the evidence to support the court's conclusions. In making that analysis, it is our obligation to try the factual questions de novo on the record, and we are thus required to reach a conclusion independent of the findings of the trial court; however, where the evidence is in conflict, we consider and may give weight to the trial court's observation of the witnesses and acceptance of one version of the facts rather than another. *In re Interest of R. W., supra; In re Interest of A.B. et al., ante* p. 220, 460 N.W.2d 114 (1990); *In re Interest of L.K. Y. and A.L. Y.,* 235 Neb. 545, 455 N.W.2d 828 (1990); *In re Interest of M.R., J.R., and N.R.,* 228 Neb. 47, 420 N.W.2d 924 (1988). Moreover, an order terminating parental rights must be based on clear and convincing evidence. *In re Interest of L.K. Y. and A.L. Y., supra.*

With that review of the law, we turn our attention to the lower court's finding that the mother should be deprived of her parental rights because of her mental condition. The statutory provisions relevant to this issue are found at § 43-292:

> The court may terminate all parental rights between the parents . . . and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that . . .
>
> . . . .
>
> (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period.

As we turn our attention to the evidence, we, of course, apply the evidential principles discussed in connection with the first summarized assignment of error. In this regard the mother specifically complains that some of the psychological evidence was based on a reasonable degree of *professional* certainty rather than on a reasonable degree of *psychological* certainty. While it would certainly have been better to have used more precise language in relating the questioned opinion to the witness' specific profession, when read in context, it becomes clear that the questioned evidence was indeed based on a reasonable degree of psychological certainty.

The record establishes that the mother is a drug abuser, has a long history of depression and suicide attempts, and has been hospitalized frequently. There is competent psychological evidence that her mental illness, whether it be called a personality disorder or something else, renders her incapable of discharging even part-time parental responsibility, and it is doubtful she could be successfully treated before the children reach majority. While there is evidence that both of the children would be served by maintaining some contact with their mother, there is also evidence that they need to be in a permanent, healthy family situation.

Suffice it to say that our de novo review of the evidence clearly and convincingly persuades us that the mother unfortunately suffers from some mental disorder which renders her incapable of discharging her parental responsibility to her 7-year-old son and 6-year-old daughter, that such condition will continue for a prolonged indeterminate period, and that it is in the best interests of both children that their mother's parental rights in and to them be terminated.

Having come to that conclusion, it is not necessary that we determine as well whether the evidence also establishes that the mother failed to comply with the various ordered plans of rehabilitation or reunification. Indeed, it seems inhumane, inconsistent, and inefficient for the State to insist that one's parental rights be terminated because of a mental inability to parent and at the same time demand that the terms of a plan designed to reunify the parent and child be fulfilled. If the parent is mentally incapable of discharging parental responsibilities, any plan of reunification is predestined to fail and can only serve to disconcert the child, frustrate the parent, and squander the State's resources.

Nonetheless, since the record fails to support the summarized assignments of error, the judgment of the court below must be, and hereby is, affirmed.

AFFIRMED.