IN RE INTEREST OF T.M.B., D.L.W., P.D.W., AND J.G.W.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. P.D.P. AND U.L.P.,
APPELLANTS.

491 N.W.2d 58

Filed October 30, 1992.    No. S-91-1275.

Richard Douglas McClain for appellants.

Gary E. Lacey, Lancaster County Attorney, Linda Porter, and Nancy R. Wynner for appellee.

Michael L. Cruise, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the Lancaster County Separate Juvenile Court adjudging T.M.B., D.L.W., P.D.W., and J.G.W. to be children as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) due to lack of proper parental care by reason of the fault of their mother and stepfather.

The natural fathers of the children, though served with notice, did not appear in the juvenile court and have not entered their appearance in this court. The natural mother and stepfather appeal and assign some 14 errors or subparts thereof. The assignments may be classified as follows: The juvenile court erred in not holding that (1) the infliction of punishment by the use of a belt that left welts where the strap touched the flesh of the child or children was lawful, reasonable, and within the rights guaranteed appellants by the common law and the Constitution of the United States and in accordance with the parents' religious beliefs; (2) § 43-247(3)(a) is violative of the Due Process Clause of the U.S. Constitution by being overly broad and inhibiting constitutionally protected conduct; (3) § 43-247(3)(a) is unconstitutionally void for vagueness in not advising parents of prohibited conduct; and (4) the evidence is insufficient to sustain the finding of the court that the children lacked proper parental support. We affirm.

At the adjudication stage, in order for the juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the

State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of D.S.*, 232 Neb. 345, 440 N.W.2d 477 (1989); Neb. Rev. Stat. § 43-279.01(3) (Cum. Supp. 1992). The standard of review in this court is de novo on the record. *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991); *In re Interest of D.S., supra.* Our review of the facts discloses the following:

The children at issue are now ages 14, 12, 11, and 8. On July 16, 1991, an officer of the Lincoln Police Department was summoned to the children's residence by a phone call reporting child abuse. Upon arriving at the home, the officer interviewed the 12-year-old, who reported that as punishment for going to a Kwik Shop without permission, her stepfather beat her about the buttocks and arms with a belt. The marks were visible to the officer. No action was taken by the officer. Striking with a belt was not an unusual form of discipline in the household. The evidence establishes that each child received from 40 to 60 blows a week with a belt, administered by the stepfather. The mother approved the use of the belt as an appropriate punishment.

The violence at the family home also included the parents' fighting in the vicinity of the children. On November 19, 1990, the police responded to a call reporting a domestic disturbance involving a possible assault with a knife outside the family residence. The police observed the mother and stepfather in the street in front of the home. The stepfather was bleeding from a finger laceration, and the police report indicated that the mother was going to use the knife to slash the tires on his car. Before she tried to slash the tires, the mother used a hammer to break out the windows on the car. A struggle ensued, and she bit his finger in order to get his hands from her throat. The police officer cited her with assault. Two of the children were present at the scene, and both were emotionally upset and crying as a result of the incident.

Later that evening, the police were contacted by the stepfather. He informed the police that his wife had threatened to kill him with a gun. The police determined that she had taken a cab to a hardware store, and she was found in the shopping center parking lot. The police looked in a sack she was carrying and found a newly purchased Jennings .22-caliber handgun.

The gun was confiscated, and she was arrested for making terroristic threats. During the period she was in jail, the children became aware of the incident.

Following this event, the stepfather also purchased a handgun, which was the same model as the one his wife had purchased. In July 1991, a loaded gun was discharged during another altercation between them. They were parked in the alley behind their house, became embroiled in an argument, and both drew their handguns. The argument was loud enough to bring the babysitter to the door while the children were with her in the house. In the meantime, one of the parties present, possibly a brother-in-law, fired one of the handguns. When police arrived, the mother told the officers that while her husband had grabbed her around the head, he had pointed a loaded pistol at her head.

These events had an adverse effect on the children. For example, D.L.W. frequently expressed fears about violence in her homelife to her teacher throughout the 1990 school year. Among the fears D.L.W. told her teacher was that she was worried about coming home to find someone dead. The school related the child's anxieties to the Nebraska Department of Social Services. In response, a social worker tried to contact the family. The mother called back the same day and refused to meet with a Child Protective Services worker. When the worker told the mother that she would have no choice but to stop by without calling, the mother replied that she would either "shoot" or "boot" the worker out the door and leave the worker to freeze to death. Thereafter, the mother ordered her children not to talk with anyone at school or from Child Protective Services about their homelife.

Based on this evidence, the juvenile court found various allegations of the amended petition and supplemental petition to be true and assumed jurisdiction over the children pursuant to § 43-247(3)(a).

We will consider the errors assigned in order. Although it was assigned as error, the alleged common-law right to inflict punishment by belt was not discussed in the brief, nor was there a discussion of how the First Amendment protection of religious freedom is implicated in a child-beating case. Errors

assigned and not argued are generally not considered. *Carlson v. Zellaha*, 240 Neb. 432, 482 N.W.2d 281 (1992); *State v. Melton*, 239 Neb. 576, 477 N.W.2d 154 (1991).

As to the reasonableness of the punishment, we conclude, as did the trial court, that applying from 40 to 60 strikes with a belt per week to the body of a child is abusive and excessive. As we said in *State v. Sinica*, 220 Neb. 792, 798-99, 372 N.W.2d 445, 447 (1985), "Child abuse is not a constitutionally protected activity." The first assignment of error is without merit.

The second and third assignments of error are not discussed in the brief and will not be considered further.

The juvenile court ordered that the children in this case fell under § 43-247(3)(a) by lack of proper parental care, and the appellants have standing to attack the statute only on those grounds. The other bases of jurisdiction under § 43-247(3)(a) cannot be challenged by the appellants because the court did not rule that they engaged in that conduct. Vagueness of a law cannot be challenged as it applies to the conduct of others. *State v. Pierson*, 239 Neb. 350, 476 N.W.2d 544 (1991); *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

It is apparent that § 43-247(3)(a) is not void for vagueness because the statute is interpreted in light of its common understanding. "Proper parental care" was defined by this court well before the court took jurisdiction of the children. See *State v. Metteer*, 203 Neb. 515, 279 N.W.2d 374 (1979). The assignments are without merit.

As to the remaining assignment of error, it is obvious that when we consider only the effect the continuing domestic violence between the parties had on the children, the evidence more than justified the assumption of jurisdiction by the juvenile court. The beating merely emphasizes the lack of parental care.

As no error is present, the judgment of the separate juvenile court is affirmed.

AFFIRMED.